IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

STOVER STOCKTON,
*Defendant.*

Criminal Action No. ELH-99-352

**MEMORANDUM OPINION**

Stover Stockton is serving a drug-trafficking sentence of 324 months of imprisonment. ECF 622.  He has been in custody since on or about August 18, 1999.  Through counsel, Stockton filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 640), supported by a memorandum (ECF 642) (collectively, the "Motion") and nine exhibits, including extensive medical records.  ECF 642-1 to ECF 642-9.[1]  The government opposes the Motion (ECF 649) and has submitted one exhibit.  ECF 649-1.  Defendant has replied (ECF 652) and has submitted an additional exhibit.  ECF 652-1

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall grant the Motion.

## I.     Background[2]

On August 12, 1999, a grand jury sitting in the District of Maryland charged Stockton and several others with conspiracy to distribute heroin in Baltimore.  ECF 1; *see United States v. Johnson*, 71 F. App'x 200, 202 (4th Cir. 2003) (per curiam).  Stockton appeared before

---

[1] Previously, Stockton filed an "Emergency Pro Se Motion Pursuant To 18 U.S.C. § 3582(c)(1)(A)."  ECF 635.

[2] The case was originally assigned to Judge Marvin Garbis, who has since retired.  The case was reassigned to me in July 2018.  Due to the age of the case, many of the pleadings are not available on the electronic docket.

Magistrate Judge Daniel Klein, Jr. on August 18, 1999, and was temporarily detained pending a detention hearing.  ECF 22.  On August 20, 1999, defendant was ordered detained pending trial. ECF 39.

A Fourth Superseding Indictment was filed on April 17, 2001.  ECF 304.  Stockton was charged in Count One with conspiracy to distribute and possession with intent to distribute heroin, in violation of 18 U.S.C. § 846.  In addition, defendant was charged in Counts Two and Three with conspiracy to murder an officer or employee of the United States, *i.e.*, a U.S. District Judge and the U.S. Attorney, in violation of 18 U.S.C. § 1117.  *See* ECF 656 (Presentence Report or "PSR"), ¶ 2; ECF 649 at 2.

Stockton and a codefendant, Levi Johnson. proceeded to a jury trial.  *See* Docket.  Judge Marvin Garbis, to whom the case was originally assigned, presided at the trial.  After a sixteen-day trial, the jury found Stockton guilty of Count One, but it was unable to reach a verdict with regard to Counts Two and Three.  *See* ECF 366 (Verdict); ECF 656, ¶ 2.

Prior to Petitioner's sentencing, the United States Probation Office completed a Presentence Report.  ECF 656 ("PSR").[3]  According to the PSR, Stockton participated in a drug trafficking organization in the Park Heights area of Baltimore.  *Id.* ¶ 7.  The organization operated between 1994 and April 2000, and employed violence in furtherance of its objectives, including the murder of Donale Crawford and Quinton Matthews.  *Id.* ¶¶ 7-9.  Further, the PSR provided that, during the conspiracy, defendant conspired with several other members of the organization to kill then-U.S. Attorney Richard Bennett and Judge Benson Everett Legg.  *Id.* ¶ 10.[4]

_____

[3] I located the Presentence Report in the Chambers file of Judge Garbis. I then submitted it for docketing, under seal.

[4] Richard Bennett now serves as a District Judge in Maryland.

The PSR calculated a base offense level of 36 for Stockton. *Id.* ¶ 14. It was adjusted upward on several grounds, for a total offense level of 51. *Id.* ¶ 22.[5] The upward adjustments included application of the murder cross-reference, pursuant to § 2D1.1(d)(1) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id.* ¶¶ 15-17, 19-21.

Stockton faced a mandatory minimum sentence of 10 years under 21 U.S.C. §§ 841(b) and 846. He had 8 criminal history points. *Id.* ¶¶ 27-30. But, the PSR determined that Stockton was a career offender. *Id.* ¶ 34. Thus, the PSR reflected a criminal history of VI. *Id.* ¶¶ 34, 38. With an offense level of 51, Stockton's Guidelines called for life imprisonment. *Id.* ¶ 38.[6]

Prior to sentencing, on October 25, 2001, Judge Garbis issued a Memorandum regarding Guidelines issues. ECF 402. Of relevance here, Judge Garbis agreed with the PSR as to certain enhancements. Judge Garbis concluded that Stockton was subject to a two-level increase in his offense level for firearm possession; a two-level increase for causing significant physical injury; and a two-level increase for his role in the conspiracy. *Id.* But, he found that Stockton was not subject to the murder cross-reference under U.S.S.G. § 2D1.1(d)(1). ECF 402 at 13.

Sentencing was held on December 13, 2001. *See* Docket; *see also* ECF 619-1 (transcripts) at 41-68.[7] The defendant, who was born in 1971, was 30 years of age at that time. ECF 656 at 1. The PSR reflects that the defendant was shot in 1987 "and has a bullet in his head." ECF 656, ¶ 51. He was shot a total of four times. *Id.*

---

[5] The highest offense level is 43.

[6] The Career Offender designation was base don prior convictions for possession with intent to distribute (*id.* ¶ 29) and assault. *Id.* ¶ 30. Assault under Maryland law no longer qualifies as a crime of violence. Thus, if sentenced today, Stockton would not qualify as a career offender.

[7] ECF 619-1 consists of transcripts of multiple hearings, including the sentencing.

Judge Garbis again declined to apply the murder cross-reference in calculating the Guidelines. ECF 402 at 66. Specifically, he stated, *id.*: "I did not find Mr. Stockton committed any murders in the way that the government was treating the murder adjustment in this case, and that is a personal and direct responsibility." This resulted in a total offense level of 42. *See Johnson*, 71 F. App'x at 202.[8] Because the sentencing range was 360 months to life, regardless of the defendant's criminal history category, Judge Garbis declined to resolve a dispute concerning Stockton's criminal history. *See Johnson*, 71 F. App'x at 202. But, Judge Garbis stated, ECF 619-1 at 66: "I do find that to go to the low end of the guidelines is to give a free pass to activities that I just can't do, much as I think that a low end of guideline sentence is very substantial . . . . I think it is not a low end of guidelines case."

Thereafter, Judge Garbis sentenced Stockton to a term of 390 months' imprisonment, to be followed by five years of supervised release. ECF 412 (Judgment).[9] Because the defendant was arrested on August 18, 1999, his sentence presumably commenced as of that date. The Fourth Circuit affirmed Stockton's conviction and sentence. *See Johnson*, 71 F. App'x 200.

On June 13, 2016, Stockton moved for a reduction of his sentence under 18 U.S.C. § 3582(c) and U.S.S.G. § 2D1.1, as amended by Amendment 782 and made retroactive by U.S.S.G. § 1B1.10(d). Judge Garbis subsequently issued an "Order Regarding Motion For Sentence Reduction Pursuant To 18 U.S.C. § 3582(c)(2)," ECF 620, and an "Order Reducing Judgment." *See* ECF 621. In ECF 620, he noted that, by virtue of Amendment 782, Stockton

---

[8] In ECF 620, dated January 3, 2017, Judge Garbis stated that he had found an offense level of 40. *Id.* at 2. A copy of the Judgment in Judge Garbis's Chambers file reflects a final offense level of 40 (36 + 2 for weapon + 2 for role in the offense). On appeal, however, the Fourth Circuit stated that Judge Garbis found an offense level of 42. *See Johnson*, 71 F. App'x at 202. And, this is consistent with ECF 402. In any event, the discrepancy is not material here.

[9] On November 2, 2012, the Court issued an Amended Judgment to correct a clerical error, resentencing Petitioner to the same 390-month sentence. ECF 582.

had an offense level of 38. *Id.* at 3. And, he stated that the revised Guidelines called for a period of incarceration ranging from 324 to 405 months. *Id.* at 1. In ECF 621, Judge Garbis opined that a sentence at the bottom of the revised Guidelines range was appropriate, explaining, *id.* at 3:

> Essentially, the Defendant has matured and has conducted himself in a manner to give the Court reasonable confidence that there is a low risk of recidivism. In particular, he has conducted himself while incarcerated - committing no offenses in the last 13 years - and has had his security level reduced by the Bureau of Prisons so as to be serving in a minimum security prison. Also, he recently has earned a G.E.D. diploma. In effect, he can be viewed as having "worked off" the burden that warranted a sentence above the low end of his Guidelines range.

Moreover, Judge Garbis concluded that, applying the factors set forth in 18 U.S.C. § 3553, a sentence of 324 months "would recognize the seriousness of Defendant's criminal conduct and provide just punishment as well as deterrence to the Defendant and to others." *Id.*

A Second Amended Judgment (ECF 622) was docketed on January 24, 2017, implementing ECF 620 and ECF 621. There, Judge Garbis reduced Stockton's sentence by 66 months, from 390 months to 324 months of imprisonment. ECF 622.

The defendant is now 49 years of age. ECF 656 at 1. He has served about 253 months of his sentence—nearly 21 years in prison. Stockton, who is presently incarcerated at FCI Fort Dix (*see* ECF 642 at 9; ECF 642-3), has a projected release date of December 24, 2022. *See* ECF 642-1.

On April 27, 2020, Stockton submitted a request for compassionate release with the Warden of Fort Dix. *See* ECF 635. On June 3, 2020, the Warden denied his request. ECF 649-1. The Warden acknowledged that Stockton's medical records indicate that he is "a 49-year-old male, diagnosed with Mild Intermittent Asthma, allergic rhinitis, DJD of the knee, hyperlipidemia, and mild obesity." *Id.* Nonetheless, because Stockton does not have a

"Debilitated Medical Condition," the Warden concluded that he is not eligible for compassionate release.

Additional facts are included, *infra*.

## II.    Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of

Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3)

the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, ___ F. App'x ___, 2020 WL 5412762, at * 1 (4th Cir. Sept. 9, 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A)   Medical Condition of the Defendant.**—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic

lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)  suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious health issues, and has served at least 10 years in prison or 75% of his term of imprisonment.  Application Note 1(C) concerns Family Circumstances.  And, Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.  The Court may not rely on the Program Statement, however.  Rather, the Court must consider the Sentencing Commission's policy statements.  *Taylor*, 2020 WL 5412762, at *1.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18

U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827.  But, compassionate release is a "rare" remedy.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.    COVID-19[10]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).  That crisis is COVID-19.[11]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam*

---

[10] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[11] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

*Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of September 9, 2020, COVID-19 has infected about 6 million Americans and caused over 189,000 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Sept. 9, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  Indeed, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020).  Thus, for a significant period of time, life as we have known it came to a halt.  And, in view of the recent resurgence of the virus, many businesses and schools are again facing restrictions.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available.  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19.  *See People of Any Age with Underlying*

*Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020),
https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer;
chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index
("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery
disease; sickle cell disease; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for
complications from COVID-19. The factors that might increase the risk include cerebrovascular
disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a
compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma
is an underlying medical condition that was moved to the new category by the CDC; it is now
identified as a condition that "might" put an individual at higher risk for COVID-19
complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing."
*See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR
DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).   Social
distancing is particularly difficult in the penal setting, however.  *Seth*, 2020 WL 2571168, at *2.
Prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id.*;
*see also Cameron*, 2020 WL 2569868, at *1.  They are not readily able to secure safety products
on their own to protect themselves, such as masks and hand sanitizers.   Consequently,
correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their
spread.  *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020)
("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see
also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins

faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, ___ F. Supp. 3d ___, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at \*2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As of September 14, 2020, there were no reported infections among the inmates and no infections among the staff at FCI Fort Dix, where the defendant is incarcerated. *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1. Nonetheless, as with the country as a whole, the virus persists in penal institutions.[12] As of September 14, 2020, the BOP reported that it has 126,754 federal inmates and 36,000 staff. And, for that date, the BOP reported 1,930 inmates and 636 BOP staff currently tested positive for COVID-19; 11,476 inmates and 1,045 staff have recovered; and 119 inmates and two staff members died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 14, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

## IV.    Discussion

Stockton seeks a reduction of his sentence to time-served under 18 U.S.C. § 3582(c)(1)(A)(i), contending that his medical conditions place him at heightened risk of severe illness from COVID-19, and constitute an "extraordinary and compelling" basis for his release. ECF 642 at 3. In particular, Stockton avers that he "has a documented, lifelong history of chronic asthma and obesity" and "a mid-life history of high cholesterol, allergies and esophageal

---

[12] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

reflux," for which he takes a host of medications. *Id.* Moreover, Stockton avers that he is not a danger to the community, noting that Judge Garbis previously found in 2017 that he posed a low risk of recidivism. *Id.* at 19-20. And, defendant posits that the factors under 18 U.S.C. § 3553(a) favor his release because he has served almost 90 percent of his sentence and his lengthy sentence has had a rehabilitative effect. *See id.* at 16-19.

The government opposes Stockton's release on each ground. Stockton is ineligible for compassionate release, according to the government, because he does not meet the categories outlined in U.S.S.G. § 1B1.13 of the BOP's Policy Statement and, in any event, none of his medical conditions have been identified by the CDC as a COVID-19 risk factor. ECF 649 at 10-17. The government also contends that Stockton's conviction illustrates that he poses a danger to the community. *Id.* at 18. Moreover, exclaiming "[e]nough is enough," the government argues that the § 3553(a) factors foreclose Stockton's release. *Id.* at 20.

For starters, Stockton has presented medical conditions that, in light of COVID-19, qualify as an extraordinary and compelling basis to grant compassionate release. To be sure, Stockton's medical condition is hardly dire. But, his ailments pass muster.

As indicated, Stockton is 49 years of age. He suffers from asthma, arthritis, high cholesterol, allergies, and esophageal influx. ECF 642-2. Moreover, Stockton qualifies as obese, with a BMI of 34. ECF 642-2 at 12. Because of his arthritis, Stockton suffers from knee, ankle, shoulder, and back pain, for which he uses braces and ambulates with a crutch. ECF 642-2 at 36-38. Notably, he is restricted to the bottom bunk and is prohibited from playing sports. *Id.* Stockton also suffers from poor eyesight and severely impaired hearing, for which he wears glasses and uses hearing aids. *Id.* at 19, 24. Defendant manages his medical conditions with an array of medications, including Albuterol and Mometasome for asthma; Atorvastatin for high

cholesterol; Indomethacin and Meloxicam for arthritis; Randatine for esophageal reflux; and Flucticasone Propoinate for allergies. *Id.* at 26, 39-40.

Stockton's asthma and obesity place him at heightened risk of severe illness if he were to contract COVID-19. The CDC now identifies obesity as a COVID-19 risk factor supported by the "strongest, most consistent evidence" drawn from multiple medical studies of the effects of the virus. *Coronavirus Disease 2019 (COVID-19), Evidence Used to Update the List of Underlying Medical Conditions That Increase a Person's Risk of Severe Illness from COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 28, 2020), https://bit.ly/2PLhO2b. Similarly, the CDC advises that asthma may increase the risk of severe illness from COVID-19. *See id.*

Moreover, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16. Here, in addition to obesity, Stockton has asthma and other other comorbidities that may aggravate his vulnerability to COVID-19, including high cholesteral, arthritis, and reflux disease.

The government maintains that Stockton is not eligible for compassionate release because he does not satisfy the criteria outlined in U.S.S.G. § 1B1.13. ECF 649 at 11-13. According to the government, the definition of "extraordinary and compelling reasons" in § 3582 is confined to those scenarios detailed in the commentary of U.S.S.G. § 1B1.13, which includes, for example, "a terminal illness." But, the judges of this district and elsewhere have repeatedly rejected the government's assertion that § 3582 is cabined by U.S.S.G. § 1B1.13. *See United States v. Rainner*, CCB-15-269, 2020 WL 4547961, at *2 (D. Md. Aug. 6, 2020); *United States v. Williams*, PWG-19-0134, 2020 WL 3073320, at *2-3 (D. Md. June 10, 2020); *United States v.*

*Gray*, RDB-16-0364, 2020 WL 2932838, at *2 (D. Md. June 3, 2020); *United States v. Gardner*, JKB-09-0619, ECF No. 72 at 3 (D. Md. May 27, 2020); *United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *see also United States v. Wise*, ELH-18-072, 2020 WL 2614816, at *5 (D. Md. May 22, 2020) (previously rejecting this argument and collecting cases).  Rather, although U.S.S.G. § 1B1.13 offers helpful guidance in construing § 3582, courts retain independent discretion to determine whether there are "extraordinary and compelling reasons" for release.

And, numerous courts have found that, in light of the COVID-19 pandemic, having a constellation of chronic medical conditions, such as obesity and asthma, qualifies as a compelling reason for compassionate release.  *See United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020)  ("Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release"); *see also, e.g., United States v. Rodriguez*, ___ F. Supp. 3d ___, 2020 WL 4592833, at *2-3 (S.D. Cal. Aug. 5, 2020) (granting compassionate release to defendant with asthma and major depressive disorder); *United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release given COVID-19); *United States v. Hilow*, No. 15-170-JD, 2020 WL 2851086, at *4 (D. N.H. June 2, 2020) (involving asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity); *United States v. Zuckerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (finding defendant's age, diabetes, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11,

2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason).

In sum, I am satisfied that, given Stockton's various medical conditions, there is an "extraordinary and compelling" basis to grant relief. Therefore, I turn to consider whether Stockton poses a danger to the community and the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

The government maintains that Stockton is a threat to the community because he "helped lead a violent street-level heroin operation, which protected its business through beatings, shootings and murder." ECF 649 at 18-19. Further, the government downplays Stockton's conduct while in BOP custody, positing that his prison record "is of minor relevance given his history of recidivism and the serious nature of the charge of conviction." *Id.* at 5.

The gravity of Stockton's crimes cannot be minimized. He was charged with serious offenses and, following a lengthy trial, he was convicted of participating in a violent drug trafficking organization.

The conspiracy spanned the period from 1994 to 2000. However, on September 12, 1994, Stockton was sentenced in Maryland to a 30-month period of incarceration. ECF 656, ¶ 30; ECF 619-1 at 64. Although there is parole in Maryland, and Stockton would not have served all 30 months, he clearly was imprisoned during the outset of the conspiracy. Therefore, defendant could not have participated in the conspiracy for the entire length of the conspiracy.

Moreover, notwithstanding that Stockton was charged with conspiring to murder a federal officer and a federal judge, the jury did not reach a verdict on the conspiracy to murder

counts.  With respect to the murder of Donale Crawford, the government conceded at Stockton's sentencing that the murder cross-reference enhancement did not apply to Stockton.  *See* ECF 619-1 at 13-14.  Although the government argued that both defendant and Johnson were responsible for the murder of Quentin Matthews, *id.* at 15, Judge Garbis disagreed; he declined to apply U.S.S.G. § 2D1.1 when calculating Stockton's guidelines range.  *See id.* at 66 ("I did not find Mr. Stockton committed any murders" and declining to apply the cross reference).

The PSR reflects that defendant had four prior convictions, totaling eight points.  ECF 656, ¶¶ 27-32.  It appears that the defendant's longest previous sentence was four years, for violation of probation in connection with a possession with intent to distribute offense.  *Id.* ¶ 29.  But, as noted, he would not have served all four years in prison.

Stockton's prior record is serious and hardly exemplary.  But, as compared to many other individuals the Court has seen over the years, the record is not egregious.  In any event, the better indicator of whether Stockton currently poses a danger is his behavior for about the past twenty years, while he has been in BOP custody.  Upon entering BOP custody, Stockton incurred several infractions, including for fighting and possession of a weapon.  ECF 642-7.  But, since 2003 – about 17 years – Stockton has not incurred a single disciplinary infraction.  This reflects Stockton's maturation and self-control.  Indeed, when Judge Garbis modified Stockton's sentence in 2017, he noted Stockton's record of thirteen infraction-free years, observing that it demonstrated that Stockton "has matured and has conducted himself in a manner to give the Court reasonable confidence that there is a low risk of recidivism."  ECF 621.

Beyond staying out of trouble, Stockton has also bettered himself.  He has successfully completed drug education; six education classes; obtained his GED; and has worked

continuously in the kitchen for almost six years.  *See* ECF 642-5; ECF 642-6.  This record is not indicative of someone who currently presents a danger to society.

Stockton's good behavior while incarcerated warrants recognition under 18 U.S.C. § 3553(a).  Defendant, who is now nearly 50 years of age, has already served more than 20 years in prison, exclusive of good conduct credit, amounting to about 75 percent of his sentence, exclusive of good conduct credit.   Adjusting for good time credit, defendant has a little more than two years left until his projected release.  And, the BOP could release him months earlier to a halfway house.

Further, Stockton's incarceration in the midst of a global pandemic has "increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction."  *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary"). Thus, given defendant's two decades of incarceration, during which he has meaningfully matured, a reduction of his sentence of about 27 months will not undermine the goals of deterrence, retribution, or rehabilitation.  *See United States v. Ebbers*, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020) (explaining that courts should assess under § 3553(a) "whether compassionate release would undermine the goals of the original sentence").

Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Stockton's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one-year of home confinement as a condition of supervised release.

### V.    Conclusion

For the forgoing reasons, I shall grant the Motion (ECF 635; ECF 640).

An Order follows, consistent with this Memorandum Opinion.


Date:   September 16, 2020                                            /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge